# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.:

SAMANTHA JERDING, individually and
on behalf of a class of similarly situated
individuals,

                                        Plaintiff,

     v.

CHAMPION PETFOODS USA, INC. and
CHAMPION PETFOODS LP,

                                         Defendants,

---

## CLASS ACTION COMPLAINT

---

1.     Plaintiff Samantha Jerding, individually and on behalf of all others similarly situated, by and through her undersigned attorneys, bring this Class Action Complaint against Defendants Champion Petfoods USA, Inc. and Champion Petfoods LP ("Defendants"), for their negligent, reckless, and/or intentional practice of misrepresenting and failing to fully disclose the presence of heavy metals and toxins in their pet food sold throughout the United States.  Plaintiff seeks both injunctive and monetary relief on behalf of the proposed Class (defined below), including requiring full disclosure of all such substances in its marketing, advertising, and labeling and restoring monies to the members of the proposed Class.  Plaintiff alleges the following based upon personal knowledge as well as investigation by her counsel and as to all other matters, upon information and belief.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**DEFENDANTS MARKET THEMSELVES AS ONLY SELLING PREMIUM DOG FOOD WITH THE SIMPLE MISSION OF "TO BE TRUSTED BY PET LOVERS"**

2.     Defendants manufacture, market, advertise, label, distribute, and sell pet food under the brand names Acana and Orijen throughout the United States, including in this District.

3.     Defendants have created a niche in the pet food market by "making biologically 'appropriate' pet food- as close to what animals would eat in nature as possible- and producing it using fresh, natural ingredients…"  They then charge a premium for this purportedly higher-quality

- 1 -

food.  The founder of the company, Peter Muhlenfeld, said, "Our core family beliefs are []
entrenched in the company, and that is to make the very best food."[1]

4.      Defendants tout that "Biologically Appropriate™ ORIJEN represents a new class of
food, designed to nourish dogs and cats according to their evolutionary adaptation to a diet rich
and diverse in fresh meat and protein[]" and that it is "trusted by pet lovers everywhere."[2]

5.      Defendants' packaging and labels further emphasize fresh, quality, and properly
sourced ingredients and even declares its dog food has "ingredients we love":



---

[1] The Globe and Mail, "How once-tiny pet-food maker took a bite of the global market," Jan. 16,
2018,https://www.theglobeandmail.com/report-on-business/small-business/canadian-
powerhouse-export-your-dog-is-eating-it/article37605774/ (last visited Feb. 6, 2018).

[2] https://www.orijen.ca/us/

6.       Yet nowhere in the labeling, advertising, statements, warranties  and/or packaging do Defendants disclose that the Contaminated Pet Foods (defined herein) contain levels of arsenic, mercury, lead, cadmium and/or BISPHENOL A ("BPA") — all known to pose health risks to humans and animals, including dogs:[3]

| Product Name | arsenic ug per kg | bpa ug per kg | cadmium ug per kg | mercury ug per kg | lead ug per kg |
|---|---|---|---|---|---|
| Acana Regionals Wild Atlantic New England Fish and Fresh Greens Dry Dog Food | 3256.40 | 32.50 | 113.00 | 51.20 | 249.30 |
| Orijen Six Fish With New England Mackerel, Herring, Flounder, Redfish, Monkfish, Silver Hake Dry Dog Food | 3169.80 | 39.50 | 200.50 | 54.90 | 38.70 |
| Orijen Original Chicken, Turkey, Wild-Caught Fish, Eggs Dry Dog Food | 907.60 | 0.00 | 93.20 | 10.80 | 489.80 |
| Orijen Regional Red Angus Beef, Boar, Goat, | 849.40 | 43.60 | 123.10 | 21.40 | 167.70 |

---

[3] All the below pet food collectively is referred to as the "Contaminated Dog Foods."

| Product Name | arsenic ug per kg | bpa ug per kg | cadmium ug per kg | mercury ug per kg | lead ug per kg |
|---|---|---|---|---|---|
| Lamb, Pork, Mackerel Dry Dog Food | | | | | |
| Acana Regionals Meadowland with Poultry, Freshwater Fish and Eggs Dry Dog Food | 846.40 | 82.70 | 37.50 | 8.70 | 489.00 |
| Acana Regionals Appalachian Ranch with Red Meats and Freshwater Catfish Dry Dog Food | 358.20 | 82.90 | 32.50 | 14.90 | 336.70 |
| Acana Regionals Grasslands with Lamb, Trout, and Game Bird Dry Dog Food | 262.80 | 0.00 | 30.60 | 9.60 | 305.00 |
| Orijen Regional Red Angus Beef, Ranch Raised Lamb, Wild Boar, Pork, Bison Dry Dog Food | 1066.50 | 37.70 | 62.10 | 21.70 | 138.50 |
| Acana Singles Duck and Pear Formula Dry Dog Food | 523.40 | 102.70 | 30.90 | 15.40 | 537.40 |

| Product Name | arsenic ug per kg | bpa ug per kg | cadmium ug per kg | mercury ug per kg | lead ug per kg |
|---|---|---|---|---|---|
| Acana Singles Lamb and Apple Formula Dry Dog Food | 401.20 | 73.20 | 35.00 | 3.20 | 423.40 |
| Acana Heritage Free-Run Poultry Formula Dry Dog Food | 292.90 | 62.20 | 27.80 | 3.30 | 290.20 |
| Acana Heritage Freshwater Fish Formula Dry Dog Food | 977.70 | 0.00 | 56.20 | 27.40 | 486.80 |
| Orijen Tundra Freeze Dried Venison, Elk, Bison, Quail, Steelhead Trout Wet Dog Food | 23.13 | 6.02 | 27.64 | 5.35 | 12.26 |
| Orijen Adult Dog Freeze Dried Chicken, Turkey, Wild-Caught Fish, Eggs Wet Dog Food | 23.21 | 13.41 | 7.74 | 9.45 | 7.33 |
| Orijen Regional Red Freeze Dried Angus Beef, Ranch Raised Lamb, Wild Boar, Pork, | 102.66 | 0.00 | 23.40 | 19.60 | 16.85 |

| Product Name | arsenic ug per kg | bpa ug per kg | cadmium ug per kg | mercury ug per kg | lead ug per kg |
|---|---|---|---|---|---|
| Bison Wet Dog Food | | | | | |
| Orijen Regional Red Angus Beef, Ranch Raised Lamb, Wild Boar, Pork, Bison Dry Dog Food | 1066.50 | 37.70 | 62.10 | 21.70 | 138.50 |
| Orijen Six Fish Wild-Caught Regional Saltwater and Freshwater Fish Dry Dog Food | 2173.90 | 39.70 | 92.20 | 58.80 | 55.10 |
| Orijen Tundra Goat, Venison, Mutton, Bison, Arctic Char, Rabbit Dry Dog Food | 1628.50 | 40.30 | 134.50 | 43.60 | 471.80 |
| Orijen Grain Free Puppy Chicken, Turkey, Wild-Caught Fish, Eggs Dry Dog Food | 791.20 | 32.20 | 87.20 | 12.20 | 490.80 |
| Acana Singles Mackerel and Greens Formula Dry Dog Food | 1510.70 | 40.10 | 112.20 | 29.60 | 251.10 |

| Product Name | arsenic ug per kg | bpa ug per kg | cadmium ug per kg | mercury ug per kg | lead ug per kg |
|---|---|---|---|---|---|
| Acana Heritage Meats Formula Dry Dog Food | 384.80 | 58.30 | 24.40 | 6.40 | 1731.90 |
| Acana Singles Pork and Squash Formula Dry Dog Food | 373.70 | 57.60 | 25.60 | 4.00 | 329.60 |

7.    Defendants warrant, promise, represent, label and/or advertise that the Contaminated Pet Foods are free of any heavy metals and/or chemicals like BPA by assuring the food represents an evolutionary diet that mirrors that of a wolf – free of anything "nature did not intend for your dog to eat:"



8.      Defendants assert that: "Virtually All Of The Nutrients In Acana Are Natural And Not Synthetic."[4] Defendants make a similar claim to the Orijen Dog Foods in maintaining that that the main source of any nutrient in Orijen is from a natural source.[5]

9.      Defendants further warrant, promise, represent, advertise and declare that the Contaminated Dog Foods are made with protein sources that are "Deemed fit for human consumption:"



---

[4] https://acana.com/wp-content/uploads/2015/10/DS-ACANA-Dog-Brochure-002.pdf

[5] https://www.orijen.ca/us/foods/dog-food/dry-dog-food/tundra/

- 8 -

**THE INCLUSION OF HEAVY METALS, BPA AND ANY OTHER CHEMICALS AT ANY LEVEL WOULD BE MATERIAL TO A REASONABLE CONSUMER BASED ON THE INHERENT AND KNOWN RISKS OF CONSUMPTION AND/OR EXPOSURE**

### Heavy Metals

10. Based on the risks associated with exposure to higher levels of arsenic, both the U.S. Environmental Protection Agency ("EPA") and U.S. Food and Drug Administration ("FDA") have set limits concerning the allowable limit of arsenic at 10 parts per billion ("ppb") for human consumption in apple juice (regulated by the FDA) and drinking water (regulating by the EPA).[6]

11. Moreover, the FDA is considering limiting the action level for arsenic in rice cereals for infants to 100 ppb.[7]

12. The Contaminated Dog Foods also contain lead, which is another carcinogen and developmental toxin known to cause health problems. Exposure to lead in food builds up over time. Buildup can and has been scientifically demonstrated to lead to the development of chronic poisoning, cancer, developmental, and reproductive disorders, as well as serious injuries to the nervous system, and other organs and body systems.

13. The Contaminated Dog Foods also contain mercury, which can cause damage to the cardiovascular system, nervous system, kidneys, and digestive tract in dogs. Continued exposure can also injure the inner surfaces of the digestive tract and abdominal cavity, causing

---

[6] The FDA has taken action based on consumer products exceeding this limit, including testing and sending warning letters to the manufacturers. *See*, *e.g*., Warning Letter from FDA to Valley Processing, Inc. (June 2, 2016), https://www.fda.gov/iceci/enforcementactions/warningletters /2016/ucm506526.htm.

[7] FDA, Draft Guidance for Industry: Inorganic Arsenic in Rice Cereals for Infants: Action Level (Apr. 2016), https://www.fda.gov/downloads/Food/GuidanceRegulation/GuidanceDocuments RegulatoryInformation/UCM493152.pdf.

lesions and inflammation. There have also been reports of lesions in the central nervous system
(spinal cord and brain), kidneys, and renal glands.[8]

14.    Finally, the Contaminated Dog Foods contain cadmium which has been observed
to cause anemia, liver disease, and nerve or brain damage in animals eating or drinking cadmium.
The U.S. Department of Health and Human Services has determined that cadmium and cadmium
compounds are known human carcinogens and the EPA has likewise determined that cadmium is
a probable human carcinogen. [9]

15.    Indeed, the FDA has acknowledged that "exposure to [these four heavy] metals are
likely to have the most significant impact on public health" and has prioritized them in connection
with its heavy metals workgroup looking to reduce the risks associated with human consumption
of heavy metals.[10]

16.    Despite the known risks of exposure to these heavy metals, Defendants have
negligently, recklessly, and/or knowingly sold the Contaminated Dog Foods without disclosing
they contain levels of arsenic, mercury, cadmium and lead to consumers like Plaintiff. Indeed,
Defendants have publicly acknowledged that consumers "have deep feelings and a sense of
responsibility for the well-being of their dogs and cats."[11]

---

[8] https://wagwalking.com/condition/mercury-poisoning

[9] https://www.atsdr.cdc.gov/phs/phs.asp?id=46&tid=15

[10] https://www.fda.gov/Food/FoodborneIllnessContaminants/Metals/default.htm

[11] https://www.theglobeandmail.com/amp/report-on-business/small-business/canadian-powerhouse-export-your-dog-is-eating-it/article37605774/

17.    Moreover, Defendants own actions show their knowledge that a reasonable consumer would care about the inclusion of heavy metals as they specifically addressed this concern on its website by touting that they require their suppliers "provide heavy metals and mercury test results, for which we also test our final food products."[12]

18.    Additionally, Defendants knew or should have been aware that a consumer would be feeding the Contaminated Dog Foods multiple times each day to his or her dog, making it the main, if not only, source of food for the dog.  This leads to repeated exposure of the heavy metals to the dog.

19.    Defendants have wrongfully and misleadingly advertised and sold the Contaminated Dog Foods without any label or warning indicating to consumers that these products contain heavy metals, or that these toxins can over time accumulate in the dog's body to the point where poisoning, injury, and/or disease can occur.

20.    Defendants' omissions are material, false, misleading, and reasonably likely to deceive the public.  This is true especially in light of the long-standing campaign by Defendants to market the Contaminated Dog Foods as healthy and safe to induce consumers, such as Plaintiff, to purchase the products.  For instance, Defendants market the Contaminated Dog Foods as "Biologically Appropriate," using "Fresh Regional Ingredients" comprised of 100 percent meat, poultry, fish, and/or vegetables, both on the products' packaging and on Defendants' websites.

---

[12] https://doodlekisses.com/forum/topics/keeping-my-dog-on-an-orijen-six-fish-diet?groupUrl=thefoodgroup

21.    Moreover, Defendants devote significant web and packaging space to the marketing of their DogStar® Kitchens, which they tell consumers "are the most advanced pet food kitchens on earth, with standards that rival the human food processing industry."

22.    Defendants state on their website that the Orijen pet foods "feature[] unmatched and unique inclusions of meat, naturally providing everything your dog or cat needs to thrive." Defendants further promise on the products' packaging and on its website that its Orijen and Acana foods are "guaranteed" to "keep your dog happy, healthy, and strong."

23.    Using such descriptions and promises makes Defendants' advertising campaign deceptive based on presence of heavy metals in the Contaminated Dog Foods. Reasonable consumers, like Plaintiff, would consider the mere inclusion of heavy metals in the Contaminated Dog Foods as a material fact in considering what pet food to purchase.  Defendants' above-referenced statements, representations, partial disclosures, and omissions are false, misleading, and crafted to deceive the public as they create an image that the Contaminated Dog Foods are healthy, safe, and free of contaminants such as arsenic and lead.  Moreover, Defendants knew or should have reasonably expected that the presence of heavy metals in its Contaminated Dog Foods is something an average consumer would consider in purchasing dog food.    Defendants' representations and omissions are false, misleading, and reasonably likely to deceive the public.

24.    Moreover, a reasonable consumer, such as Plaintiff and other members of the Class (as defined herein), would have no reason to not believe and/or anticipate that the Contaminated Dog Foods are ""Biologically Appropriate" foods that use "Fresh Regional Ingredients" consisting only of meat, poultry, fish, and vegetables.  Non-disclosure and/or concealment of the toxins in the Contaminated Dog Foods coupled with the misrepresentations alleged herein by Defendants

suggesting that the food provides complete health and is safe is intended to and does, in fact, cause consumers to purchase a product Plaintiff and members of the class not have bought if the true quality and ingredients were disclosed.  As a result of these false or misleading statements and omissions, Defendants have generated substantial sales of the Contaminated Dog Foods.

25.     The expectations of reasonable consumers and deception of these consumers by Defendants' advertising, misrepresentations, packaging, labeling is further highlighted by the public reaction to the allegations in this lawsuit as reported by various websites.

26.     Plaintiff brings this action individually and on behalf of all other similarly situated consumers within Colorado who purchased the Contaminated Dog Foods, in order to cause the disclosure of the presence of heavy metals that pose a known risk to both humans and animals in the Contaminated Dog Foods, to correct the false and misleading perception Defendants have created in the minds of consumers that the Contaminated Dog Foods are high quality, safe, and healthy and to obtain redress for those who have purchased the Contaminated Dog Foods.

### *Bisphenol A ("BPA")*

27.     The dangers of BPA in human food are recognized by the FDA, along with various states.  For instance, manufacturers and wholesalers are prohibited from selling any children's products that contain BPA and any infant formula, baby food, or toddler food stored in containers with intentionally added BPA

28.     Still, certain Contaminated Dog Foods are sold by Defendants that contain levels of BPA—an industrial chemical that "'is an endocrine disruptor. It's an industrial chemical that according to Medical News Today' . . . interferes with the production, secretion, transport, action,

function and elimination of natural hormones.'"[13]  BPA has been linked to various health issues, including reproductive disorders, heart disease, diabetes, cancer, and neurological problems.[14]

29.    Despite the presence of this harmful chemical, Defendants prominently warrant, claim, feature, represent, advertise, or otherwise market the Contaminated Dog Foods as made from "Biologically Appropriate" and "Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish, and vegetables.  Indeed, each bag prominently displays the percentage of these ingredients on the front.

30.    Defendants' website and packaging also warrants, claims, features, represents, advertises, or otherwise markets that its products are natural. In fact, Orijen's slogan is "Nourish as Nature Intended."



---

[13]Dr. Karen Beeker, *A Major Heads Up: Don't Feed This to Your Dog,* Healthy Pets (Feb. 13, 2017),   https://healthypets.mercola.com/sites/healthypets/archive/2017/02/13/dogs-canned-food-dangers.aspx.

[14] Christian Nordquist, *Bisphenol A: How Does It Affect Our Health?* Medical News Today (May 24, 2017), https://www.medicalnewstoday.com/articles/221205.php.

31.    In promoting their promise, warranty, claim, representation, advertisement, or otherwise marketing that the Contaminated Dog Foods are safe and pure, Defendants further assure its customers:

> Equipped with state-of-the-art fresh food processing technologies, our DogStar® kitchens feature 25,000 square feet of cooler space, capable of holding over 500,000 pounds of fresh local meats, fish and poultry, plus fresh whole local fruits and vegetables.

> Unmatched by any pet food maker, our ingredients are deemed fit for human consumption when they arrive at our kitchens fresh, bursting with goodness, and typically within 48 hours from when they were harvested.

32.    To this end, Defendants' websites further warrants, claims, features, represents, advertises, or otherwise markets that the Contaminated Dog Foods are manufactured in such a way that would prevent BPA forming by closely monitoring temperatures and quality:

> "[O]ur unique Votator Heat Exchangers bring chilled fresh ingredients to room temperature without introducing water or steam, which enables us to add even more fresh meats into our foods."

> "Referred to as 'the most significant preconditioning development for extrusion cooking in the last 20 years,' our High Intensity Preconditioners were custom-built for DogStar®, feeding fresh meats from the Votators to Extruders at rates previously unheard of, and without high temperatures."

> "At the heart of our kitchens is a twin thermal extruder which is fed fresh ingredients from our High Intensity Preconditioner.

> The first of its kind in North America, it took 11 months to build, and features custom steam injection to enable very high fresh meat inclusions and a gentle cooking process which helps further reduce the carbohydrates in our foods and preserves their natural goodness."

33.    Thus, Defendants engaged in deceptive advertising and labeling practice by expressly warranting, claiming, stating, featuring, representing, advertising, or otherwise marketing on Acana and Orijen labels and related websites that the Contaminated Dog Foods are natural, fit for human consumption, fit for canine consumption, and made from "Biologically

Appropriate" and "Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish, and vegetables when they contain the non-naturally occurring chemical BPA.

34.     Based on these false representations, Defendants charge a premium, knowing that the claimed natural make-up of the Contaminated Dog Foods (as well as all of the other alleged false and/or misleading representations discussed herein) is something an average consumer would consider as a reason in picking a more expensive dog food.  By negligently and/or deceptively representing, marketing, and advertising the Contaminated Dog Foods as natural, fit for human consumption, fit for canine consumption,  and made from "Biologically Appropriate" and "Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish, and vegetables, Defendants wrongfully capitalized on, and reaped enormous profits from, consumers' strong preference for natural pet food products.

35.     Plaintiff brings this action individually and on behalf of all other similarly situated consumers within Colorado who purchased the Contaminated Dog Foods, in order to cause the disclosure of the presence of BPA that pose a known risk to both humans and animals in the Contaminated Dog Foods, to correct the false and misleading perception Defendants have created in the minds of consumers that the Contaminated Dog Foods are high quality, safe, and healthy and to obtain redress for those who have purchased the Contaminated Dog Foods.

**JURISDICTION AND VENUE**

36.     This Court has original jurisdiction over all causes of action asserted herein under the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and more than two-thirds of the

Class reside in states other than the states in which Defendants are citizens and in which this case is filed, and therefore any exemptions to jurisdiction under 28 U.S.C. §1332(d) do not apply.

37.    Venue is proper in this Court pursuant to 28 U.S.C. §1391, because Plaintiff is a citizen of the State of Colorado and suffered injury as a result of Defendants' acts in this district, many of the acts and transactions giving rise to this action occurred in this district, Defendants conduct substantial business in this district, Defendants have intentionally availed themselves of the laws and markets of this district, and Defendants are subject to personal jurisdiction in this district.

## PARTIES

38.    Plaintiff Samantha Jerding ("Plaintiff") is, and at all times relevant hereto has been, a citizen of the state of Colorado.  Plaintiff purchased the following Contaminated Dog Foods and fed the food to her two dogs, Maddox and Bailey: Acana Meadowland with Poultry, Freshwater Fish and Eggs.  Plaintiff purchased Contaminated Dog Foods twice per month (priced at around $70-80 per bag), on average, between January 1, 2018, and approximately March 1, 2018, when she discovered that the food was contaminated. Plaintiff purchased the Contaminated Dog Foods from Duke Dog Wash in Wheat Ridge, Colorado.  Prior to purchasing the Contaminated Dog Foods, Plaintiff saw the products the nutritional claims on the packaging, which she relied on in deciding to purchase the Contaminated Dog Foods.  During that time, based on the false and misleading claims, warranties, representations, advertisements and other marketing by Defendants, Plaintiff was unaware that the Contaminated Dog Foods contained any level of heavy metals, chemicals or toxins and would not have purchased the food if that was fully disclosed.

Plaintiff was injured by paying a premium for the Contaminated Dog Foods that have no or *de minimis* value based on the presence of the alleged heavy metals, chemicals and toxins.

39.    As the result of Defendants' negligent, reckless, and/or knowingly deceptive conduct as alleged herein, Plaintiff was injured when she paid the purchase price or a price premium for the Contaminated Dog Foods that did not deliver what was promised. She paid the premium price on the assumption that the labeling of the Contaminated Dog Foods was accurate and that it was healthy, superior quality, natural, and safe for dogs to ingest. Plaintiff would not have paid this money had she known that the Contaminated Dog Foods contained any levels of the heavy metals, chemicals and/or toxins. Plaintiff was further injured because the Contaminated Dog Foods that have no or *de minimis* value based on the presence of the alleged heavy metals, chemicals and toxins. Damages can be calculated through expert testimony at trial. Further, should Plaintiff encounter the Contaminated Dog Foods in the future, she could not rely on the truthfulness of the packaging, absent corrective changes to the packaging and advertising of the Contaminated Dog Foods.

40.    Defendant Champion Petfoods USA Inc. ("Champion USA") is incorporated in Delaware. Its headquarters and principal place of business, as of March 2016, is located at 12871 Bowling Green Road, Auburn, KY 42206. Since that time, all Contaminated Pet Foods sold in the United States are manufactured, sourced and sold by Champion USA.   .

41.    Defendant Champion Petfoods LP ("Champion Canada") is a Canadian limited partnership with its headquarters and principal place of business located at 11403-186 St NW, Edmonton, Alberta T5S 2W6. Defendant Champion Canada wholly owns, operates, and/or

controls Defendant Champion USA. Prior to March 2016, all Contaminated Pet Foods sold in the United States were manufactured, sourced and sold by Champion Canada.

42.     Defendants formulate, develop, manufacture, label, distribute, market, advertise, and sell the Contaminated Dog Foods under the dog food brand names Orijen and Acana throughout the United States, including in this District, during Class Period (defined below).  The advertising, labeling, and packaging for the Contaminated Dog Foods, relied upon by Plaintiff, was prepared, reviewed, and/or approved by Defendants and their agents, and was disseminated by Defendants and their agents through marketing, advertising, packaging, and labeling that contained the misrepresentations alleged herein.  The marketing, advertising, packaging and labeling for the Contaminated Dog Foods was designed to encourage consumers to purchase the Contaminated Dog Foods and reasonably misled the reasonable consumer, *i.e.*, Plaintiff and the Class, into purchasing the Contaminated Dog Foods.  Defendants own, manufacture, and distribute the Contaminated Dog Foods, and created, allowed, negligently oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive labeling and advertising for the Contaminated Dog Foods.

## FACTUAL ALLEGATIONS

### The Contaminated Dog Foods

43.     The Contaminated Dog Foods include the following:

(a) Acana Regionals Appalachian Ranch with Ranch-Raised Red Meats & Freshwater Catfish





(b) Acana Regionals Grasslands with Grass-Fed Kentucky Lamb, Freshwater Trout & Game Bird





(c)  Acana Regionals Meadowland with Free-Run Poultry, Freshwater Fish, and Nest-Laid Eggs





(d) Acana Regionals Wild Atlantic with New Wild New England Fish & Fresh Kentucky Greens





(e) Orijen Original with Fresh Free-Run Chicken and Turkey, Wild-Caught Fish and Nest-Laid Eggs





(f)  Orijen Regional Red with Angus Beef, Wild Boar, Boer Goat, Romney
Lamb, Yorkshire Pork & Wild Mackerel





(g) Orijen Regional Red Angus Beef, Ranch Raised Lamb, Wild Boar, Pork, Bison Dry Dog Food



(h) Orijen Six Fish with New England Mackerel, Herring, Flounder, Redfish, Monkfish and Silver Hake:





(i)  Acana Singles Duck and Pear Formula Dry Dog Food





(j)  Acana Singles Lamb and Apple Formula Dry Dog Food





(k) Acana Heritage Free-Run Poultry Formula Dry Dog Food





(l)   Acana Heritage Freshwater Fish Formula Dry Dog Food





(m)Orijen Tundra Freeze Dried Venison, Elk, Bison, Quail, Steelhead Trout

Wet Dog Food



(n) Orijen Adult Dog Freeze Dried Chicken, Turkey, Wild Caught Fish, Eggs

Wet Dog Food



(o) Orijen Regional Red Freeze Dried Angus Beef, Ranch Raised Lamb, Wild Boar, Pork, Bison Wet Dog Food



(p) Orijen Regional Red Angus Beef, Ranch Raised Lamb, Wild Boar, Pork, Bison Dry Dog Food



(q) Orijen Six Fish Wild-Caught Regional Saltwater and Freshwater Fish
Dry Dog Food



(r) Orijen Tundra Goat, Venison, Mutton, Bison, Arctic Char, Rabbit Dry
Dog Food



(s)  Orijen Grain Free Puppy Chicken, Turkey, Wild-Caught Fish, Eggs Dry

Dog Food





(t)  Acana Singles Mackerel and Greens Formula Dry Dog Food





(u)  Acana Heritage Meats Formula Dry Dog Food





(v) Acana Singles Pork and Squash Formula Dry Dog Food





**Heavy Metals Create Known Risks When Ingested**

44.     Toxins like arsenic, mercury, cadmium and lead can cause serious illness to humans and animals.  A company should be vigilant to take all reasonable steps to avoid causing family pets to ingest these toxins.

45.     Arsenic is a semi-metal element in the periodic table.  It is odorless and tasteless. Arsenic occurs naturally in the environment as an element of the earth's crust; it is found in rocks, soil, water, air, plants, and animals.  Arsenic is combined with other elements such as oxygen, chlorine, and sulfur to form inorganic arsenic compounds.  Historically, arsenic compounds were used in many industries, including: (i) as a preservative in pressure-treated lumber; (ii) as a preservative in animal hides; (iii) as an additive to lead and copper for hardening; (iv) in glass manufacturing; (v) in pesticides; (vi) in animal agriculture; and (vii) as arsine gas to enhance junctions in semiconductors.  The United States has canceled the approvals of some of these uses, such as arsenic-based pesticides, for health and safety reasons.  Some of these cancellations were based on voluntary withdrawals by producers.  For example, manufacturers of arsenic-based wood preservatives voluntarily withdrew their products in 2003 due to safety concerns, and the EPA signed the cancellation order.  In the Notice of Cancellation Order, the EPA stated that it "believes that reducing the potential residential exposure to a known human carcinogen is desirable." Arsenic is an element—it does not degrade or disappear.

46.     Inorganic arsenic is a known cause of human cancer.  The association between inorganic arsenic and cancer is well documented.  As early as 1879, high rates of lung cancer in miners from the Kingdom of Saxony were attributed, in part, to inhaled arsenic.  By 1992, the combination of evidence from Taiwan and elsewhere was sufficient to conclude that ingested

inorganic arsenic, such as is found in contaminated drinking water and food, was likely to increase

the incidence of several internal cancers.  The scientific link to skin and lung cancers is particularly

strong and longstanding, and evidence supports conclusions that arsenic may cause liver, bladder,

kidney, and colon cancers as well.

47.    Lead is a metallic substance formerly used as a pesticide in fruit orchards, but the

use of such pesticides is now prohibited in the United States.  Lead, unlike many other poisons,

builds up in the body over time as the person is exposed to and ingests it, resulting in a cumulative

exposure which can, over time, become toxic and seriously injurious to health.  Lead poisoning

can occur from ingestion of food or water containing lead.  Acute or chronic exposure to material

amounts of lead can lead to severe brain and kidney damage, among other issues, and ultimately

cause death.

48.    The FDA has set standards that regulate the maximum parts per billion of lead

permissible in water: bottled water cannot contain more than 5 ppb of total lead or 10 ppb of total

arsenic.  *See* 21 C.F.R. §165.110(b)(4)(iii)(A).

49.    Mercury is a known toxin that creates health risks to both humans and animals. The

impact of the various ways humans and animals are exposed and ingest mercury has been studied

for years. In fact, in as early as 1997, the EPA issued a report to Congress that detailed the health

risks to both humans and animals.[15]

50.    Based on the toxicity and risks of Mercury, regulations have been enacted at both

the Federal and state level.

---

[15] https://www3.epa.gov/airtoxics/112nmerc/volume5.pdf

51.     Cadmium is likewise a known toxin that creates risk when ingested by animals or humans. It has been specifically noted that "Kidney and bone effects have [] been observed in laboratory animals  ingesting cadmium.  Anemia, liver disease, and nerve or brain damage have been observed in animals eating or drinking cadmium."[16]

**Defendants Falsely Advertise the Contaminated Dog Foods as Nutritious, Superior Quality, Pure, and Healthy While Omitting Any Mention of the Heavy Metals, as Well as Claim the Foods Are Natural, Pure, and Safe Despite the Inclusion of the Industrial Chemical BPA**

52.     Defendants formulate, develop, manufacture, label, package, distribute, market, advertise, and sell their extensive Acana and Orijen lines of dry and freeze-dried pet food products across the United States, including the Contaminated Dog Foods.

53.     Defendants tout themselves as "a leader and innovator in making pet foods, Champion works to our own standards. These are our standards, not USDA, not FDA, not CFIA. These agencies set minimum standards which we exceed exponentially. Why?  Because our Mission and our Values dictate that we do, and that's what pet lovers expect from us.

54.     In 2016, Defendants opened DogStar® Kitchens, a 371,100 square foot production facility on 85 acres of land outside Bowling Green, Kentucky. This facility has the capacity to produce up to 220 million pounds of Acana and Orijen pet food per year. The CEO of Champion Pet Foods, Frank Burdzy, said, "The US is our fastest growing market."[17] Prior to this facility's construction, Defendants' Acana and Orijen products were exclusively manufactured in Canada.

---

[16] https://www.atsdr.cdc.gov/ToxProfiles/tp5-c1-b.pdf

[17]      https://www.foodengineeringmag.com/articles/95994-champion-petfoods-opens-dogstar-kitchens

Since that facility began production, all Acana and Orijen foods sold in the United States are manufactured at the DogStar® Kitchens facility.

55.     Defendants have represented a commitment to using fresh and local ingredients, including wild-caught fish.

56.     Defendants have represented that its DogStar® Kitchens meet the European Union's standard for pet food: "USA Dogstar® kitchens, ingredients, processes and foods all meet the strictest European Union standards – which are stricter than those set by AAFCO, the CFIA or FDA. Likewise, Defendants proclaim that Orijen is "[u]nmatched by any other pet food maker anywhere, our kitchens meet the strictest standards in the world, including the Government of Canada, and the European Union."  Indeed, Defendants' own CEO has stated that "[e]ven if we're selling in Canada or the U.S or Asia, we manufacture to the EU standard…"

57.     However, contrary to Defendants' assertion, they do not meet the European Union standards for pet foods or human consumption.

58.     The European Parliament and the Council of the European Union state that "[p]roducts intended for animal feed must be sound, genuine and of merchantable quality and therefore when correctly used must not represent any danger to human health, animal health or to the environment or adversely affect livestock production." The European Parliament and the Council of the European Union provide maximum levels for undesirable substances in animal feed, such as lead, arsenic, mercury, and cadmium, and make clear that products that contain undesirable substances that exceed the specified maximum levels will be prohibited.  In relevant part, subject to certain exceptions, arsenic must not exceed 2ppm (or 2000ppb).  Yet, the testing results

contained herein show that certain of Defendants' products have exceeded the European Union's

maximum level for arsenic in animal feed.

59.    Defendants' representation that the foods and ingredients are fit for human

consumption are likewise misleading under the European Union standards.

60.    Defendants warrant, claim, state, represent, advertise, label, and market their

Contaminated Dog Foods as natural, fit for human consumption, fit for canine consumption, in

compliance with relevant EU regulations and standards, and made from "Biologically

Appropriate" and "Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish, and

vegetables; containing "only 1 supplement – zinc;" "provid[ing] a natural source of virtually every

nutrient your dog needs to thrive;" and "guaranteed to keep your dog healthy, happy and strong."

Defendants therefore had a duty to ensure that these statements were true.  As such, Defendants

knew or should have known that the Contaminated Dog Foods included the presence of heavy

metals and/or BPA.

61.    Likewise, by warranting, claiming, stating, featuring, representing, advertising or

otherwise marketing that Orijen and Acana foods, including the Contaminated Dog Foods, are

natural, fit for human consumption, fit for canine consumption, in compliance with relevant EU

regulations and standards, and made from "Biologically Appropriate" and "Fresh Regional

Ingredients" consisting entirely of fresh meat, poultry, fish, and vegetables, Defendants had a

known duty to ensure that there were no chemicals included in the Contaminated Dog Foods. In

fact, Defendants offered further assurances by representing that the quality control over the

manufacturing of the Contaminated Dog Foods as a rigid process free of outsourcing.

62.     Defendants specifically promise on their website, "[W]e prepare ACANA ourselves, in our own kitchens, where we oversee every detail of food preparation — from where our ingredients come from, to every cooking, quality and food safety process."  Similarly, Defendants promise that their "Dogstar® Kitchens have access to a myriad of specialty family farms, with whom we partner for our supply of trusted ingredients."  Finally, Defendants' promise "[s]tandards that rival the human food processing industry for authenticity, nutritional integrity, and food safety."  According to the Orijen and Acana websites, Defendants use "feature state-of-the-art fresh food processing technologies."  As such, Defendants knew or should have known that higher temperatures coupled with the type of containers used in manufacturing create a real risk of BPA in their products.

63.     The Contaminated Dog Foods are available at numerous retail and online outlets in the United States, including Colorado.

64.     The Contaminated Dog Foods are widely advertised, and Defendants employ a Chief Marketing Officer, a Vice President for Customer Engagement, and a Director of Marketing in both the United States and Canada.

65.     The official websites for Acana and Orijen display the Contaminated Dog Foods; descriptions and full lists of ingredients for the Contaminated Dog Foods and includes the following promises:

66.     Defendants' websites repeat the false and misleading claims, warranties, representations, advertisements, and other marketing about the Contaminated Dog Foods benefits, quality, purity, and natural make-up, without any mention of the heavy metals and/or BPA they contain.  This is not surprising given that natural pet food sales represent over $5.5 billion in the United States and have consistently risen over the years.[18]

---

[18] Statista, *Natural and Organic Pet Food Sales in the U.S. from 2009 to 2019,* The Statistics Portal (accessed Oct. 25, 2017).  https://www.statista.com/statistics/548957/us-sales-of-natural-and-organic-pet-food/



67.     Moreover, Defendants have themselves acknowledged the importance of quality

dog food to the reasonable consumer:

> "Our No. 1 mandate is BAFRINO – biologically appropriate, fresh regional
> ingredients, never outsourced," said Frank Burdzy, president and chief executive
> officer of Champion Petfoods in Canada, in an interview with the Daily News
> Monday prior to housewarming activities outside and inside the kitchens.
>
> "We build relationships with our suppliers and farms and fisheries. We are trusted
> by pet owners," Burdzy said.[19]

68.     As a result of Defendants' omissions, a reasonable consumer would have no reason

to suspect the presence of heavy metals and/or BPA in the Contaminated Dog Foods without

conducting his or her own scientific tests, or reviewing third-party scientific testing of these

products.

69.     However, after conducting third-party scientific testing, it is clear that the

Contaminated Dog Food does in fact contain levels both heavy metals and/or BPA.

---

[19] Mason, C., *Champion Petfoods DogStar Kitchens holds housewarming*, BOWLING GREEN DAILY
NEWS (Jan. 5, 2016) *available at* http://www.bgdailynews.com/news/champion-petfoods-dogstar-
kitchens-holds-housewarming/article_bf34275d-2242-5f3f-a9cc-
14174235acc1.html?utm_medium=social&utm_source=email&utm_campaign=user-share    (last
accessed March 1, 2018).

**Defendants' Statements and Omissions Violate Colorado Laws**

70.     Colorado laws are designed to ensure that a company's claims about its products are truthful and accurate.  Defendants violated these state laws by negligently, recklessly, and/or intentionally incorrectly claiming that the Contaminated Dog Foods are pure, healthy, and safe for consumption and by not accurately detailing that the products contain the toxic heavy metals and/or BPA.  Defendants misrepresented that the Contaminated Dog Foods are natural, fit for human consumption, fit for canine consumption, in compliance with relevant EU regulations and standards and made from "Biologically Appropriate" and "Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish, and vegetables; "feature[] unmatched and unique inclusions of meat, naturally providing everything your dog or cat needs to thrive;" and are "guaranteed" to "keep your dog happy, healthy, and strong."

71.     Defendants' marketing and advertising campaign has been sufficiently lengthy in duration, and widespread in dissemination, that it would be unrealistic to require Plaintiff to plead reliance upon each advertised misrepresentation.

72.     Defendants have engaged in this long-term advertising campaign to convince potential customers that the Contaminated Dog Foods were pure, healthy, safe for consumption, and did not contain harmful ingredients such as arsenic and lead. Likewise, Defendants have engaged in this long-term advertising campaign to convince potential customers that the Contaminated Dog Foods are natural, pure, and safe despite the presence of BPA in the food.

**Plaintiff's Reliance Was Reasonable and Foreseen By Defendants**

73.    Plaintiff reasonably relied on Defendants' own claims, warranties, representations, advertisements, and other marketing concerning the particular qualities and benefits of the Contaminated Dog Foods.

74.    Plaintiff relied upon Defendants' false and/or misleading representations alleged herein, including the websites and the Contaminated Dog Foods' labels and packaging in making their purchasing decisions.

75.    Any reasonable consumer would consider the labeling of a product (as well as the other false and/or misleading representations alleged herein) when deciding whether to purchase. Here, Plaintiff relied on the specific statements and misrepresentations by Defendants that the Contaminated Dog Foods were natural, fit for human consumption, fit for canine consumption, in compliance with relevant EU regulations and standards and made from "Biologically Appropriate" and "Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish, and vegetables; "feature[ing] unmatched and unique inclusions of meat, naturally providing everything your dog or cat needs to thrive;" and were "guaranteed" to "keep your dog happy, healthy, and strong" with no disclosure of the inclusion of heavy metals, including arsenic or lead, and BPA.

**Defendants' Knowledge and Notice of Their Breaches of Their Express and Implied Warranties**

76.    Defendants had sufficient notice of their breaches of express and implied warranties. Defendants have, and had, exclusive knowledge of the physical and chemical makeup of the Contaminated Dog Foods.

77.     Defendants have publicly stated on their website that they require their suppliers "provide heavy metals and mercury test results, for which we also test our final food products."[20] As such, they have had testing results showing the inclusion of heavy metals in the Contaminated Dog Foods.

78.     Additionally, Defendants received notice of the contaminants in their dog and cat food, including the Contaminated Dog Foods, through the Clean Label Project, which found higher levels of heavy metals in its dog and cat food products. In fact, Defendants actually responded to the Clean Label Project's findings.  Defendants spoke with the Clean Label Project by phone regarding its findings and methodology, which showed that Orijen pet foods have high levels of heavy metals compared to other pet foods. The Clean Label Project informed Defendants that it compared Orijen pet foods to competitors' products and gave them a one-star rating, meaning they contained higher levels of contaminants than other products on the market.[21]  Defendants' direct contact with the Clean Label Project demonstrates its knowledge about the Contaminated Dog Foods.

79.     Defendants also issued a white paper in defense of the Clean Label Project findings that acknowledges that their products contain heavy metals.[22]   In that same White Paper,

---

[20] https://doodlekisses.com/forum/topics/keeping-my-dog-on-an-orijen-six-fish-diet?groupUrl=thefoodgroup

[21]  Clean Label Project, "Orijen: Why Aren't You Listening to Your Customers?" http://www.cleanlabelproject.org/orijen-customers/ (last visited Feb. 6, 2018).

[22] http://www.championpetfoods.com/wp-content/themes/champion-petfoods/res/research/Champion-Petfoods-White-Paper-Heavy-Metals.pdf

Defendants state "[w]e systematically test ORIJEN and ACANA products for heavy metals (arsenic, cadmium, lead and mercury) at two third-party laboratories."

80.    The White Paper discusses the sources of arsenic, cadmium, lead and mercury, and what Defendants contend to be acceptable levels of those heavy metals in pet food.

81.    Defendants did not widely disseminate this White Paper or direct consumers to this White Paper. Moreover, Defendants did not change their packaging or labeling to include a disclaimer that the Contaminated Dog Foods contain any levels of the heavy metals or include a copy of the White Paper findings on the packaging or labeling.  Finally, there is no disclosure as to whether the Contaminated Dog Foods tested were manufactured in the United States or Canada.

82.    Defendants likewise had knowledge of the potential risk and inclusion of BPA in their Contaminated Dog Foods. Defendants have publicly stated they ask their suppliers if the packaging contains BPA while at the same time admitting that they in fact do not perform any tests to confirm that the Contaminated Dog Foods are BPA free.  Moreover, Defendants no longer boast about "exceeding" regulations when asked if the Contaminated Pet Foods are BPA free.

**Privity Exists with Plaintiff and the Proposed Class**

83.    Defendants knew that consumers such as Plaintiff and the proposed Class would be the end purchasers of the Contaminated Dog Foods and the target of their advertising and statements.

84.    Defendants intended that the warranties, advertising, labeling, statements, and representations would be considered by the end purchasers of the Contaminated Dog Foods, including Plaintiff and the proposed Class.

85.     Defendants directly marketed to Plaintiff and the proposed Class through statements on their website, labeling, advertising, and packaging.

86.     Plaintiff and the proposed Class are the intended beneficiaries of the expressed and implied warranties.

## CLASS ACTION ALLEGATIONS

87.     Plaintiff brings this action individually and on behalf of the following Class pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who are citizens of the State of Colorado who, from July 1, 2013, to the present, purchased the Contaminated Dog Foods for household or business use, and not for resale (the "Class");

88.     Excluded from the Class are the Defendants, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

89.     This action is brought and may be properly maintained as a class action.  There is a well-defined community of interests in this litigation and the members of the Class are easily ascertainable.

90.     The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of all Class members in a single action will provide substantial benefits to the parties and Court.

91.     Questions of law and fact common to Plaintiff and the Class include, but are not limited to, the following:

> (a)     whether Defendants owed a duty of care to Plaintiff and the Class;
>
> (b)     whether Defendants knew or should have known that the Contaminated Dog Foods contained heavy metals;

(c)    whether Defendants knew or should have known that the Contaminated Dog Foods contained BPA;

(d)    whether Defendants wrongfully represented and continue to represent that the Contaminated Dog Foods are natural, fit for human consumption, fit for canine consumption, in compliance with relevant EU regulations and standards and made from "Biologically Appropriate" and "Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish, and vegetables;

(e)    whether Defendants wrongfully represented and continue to represent that the Contaminated Dog Foods are healthy, superior quality, nutritious and safe for consumption;

(f)    whether Defendants wrongfully represented and continue to represent that the Contaminated Dog Foods are natural;

(g)    whether Defendants wrongfully represented and continue to represent that the Contaminated Dog Foods are pure and safe;

(h)    whether Defendants wrongfully represented and continue to represent that the manufacturing of the Contaminated Dog Foods is subjected to rigorous standards, including temperature;

(i)    whether Defendants wrongfully failed to state that the Contaminated Dog Foods contained heavy metals and/or BPA;

(j)    whether Defendants' representations in advertising, warranties, packaging, and/or labeling are false, deceptive, and misleading;

(k)    whether those representations are likely to deceive a reasonable consumer;

(l)    whether a reasonable consumer would consider the presence of heavy metals and/or BPA as a material fact in purchasing pet food;

(m)    whether Defendants had knowledge that those representations were false, deceptive, and misleading;

(n)    whether Defendants continue to disseminate those representations despite knowledge that the representations are false, deceptive, and misleading;

(o)    whether a representation that a product is healthy, superior quality, nutritious and safe for consumption and does not contain arsenic and/or lead is material to a reasonable consumer;

(p)     whether Defendants' representations and descriptions on the labeling of the Contaminated Dog Foods are likely to mislead, deceive, confuse, or confound consumers acting reasonably;

(q)     whether Defendants violated Colorado law;

(r)     whether Defendants breached their express warranties;

(s)     whether Defendants breached their implied warranties;

(t)     whether Defendants engaged in unfair trade practices;

(u)     whether Defendants engaged in false advertising;

(v)     whether Defendants made negligent and/or fraudulent misrepresentations and/or omissions;

(w)     whether Plaintiff and the members of the Class are entitled to actual, statutory, and punitive damages; and

(x)     whether Plaintiff and members of the Class are entitled to declaratory and injunctive relief.

92.     Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Class. Identical statutory violations and business practices and harms are involved.  Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

93.     Plaintiff's claims are typical of those of the members of the Class in that they are based on the same underlying facts, events, and circumstances relating to Defendants' conduct.

94.     Plaintiff will fairly and adequately represent and protect the interests of the Class, have no interests incompatible with the interests of the Class, and have retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

95.    Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Class is small such that, absent representative litigation, it would be infeasible for members of the Class to redress the wrongs done to them.

96.    Questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.

97.    As a result of the foregoing, class treatment is appropriate.

## CLAIMS FOR RELIEF

### COUNT I
**Violation of the Colorado Consumer Protection Act,
Colo. Rev. Stat. Ann. §§6-1-101, Et Seq., Against Defendants
on Behalf of the Class**

98.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

99.    Defendants' deceptive conduct alleged herein violates the following provisions of Colorado's Consumer Protection Act (the "CCPA"):

(a) Colo. Rev. Stat. Ann. §§6-1-105(1)(e), by negligently, recklessly, and/or intentionally representing that the Contaminated Dog Foods are nutritious, superior quality, pure, natural, healthy and safe for consumption and by failing to make any mention of the heavy metals and or BPA in the Contaminated Dog Foods;

(b) Colo. Rev. Stat. Ann. §§6-1-105(1)(g), by negligently, recklessly, and/or intentionally representing that the Contaminated Dog Foods were of a particular standard, quality, or grade, when they were of another;

(c) Colo. Rev. Stat. Ann. §§6-1-105(1)(i), by negligently, recklessly, and/or intentionally advertising the Contaminated Dog Foods with intent not to sell them as advertised; and

(d) Colo. Rev. Stat. Ann. §§6-1-105(1)(u), by negligently, recklessly, and/or intentionally failing to disclose that the Contaminated Dog Foods contained heavy metals and/or BPA, which was known to Defendants at the time of advertisement and was intended to induce Plaintiff and the Class to purchase the products.

100.    Defendants' deceptive trade practices significantly impacted the public.

101.    Plaintiff and the Class were purchasers of Defendants goods.

102.    Plaintiff and the Class were deceived by Defendants' deceptive trade practices and purchased the Contaminated Dog Foods due to Defendants' deceptive trade practices.

103.    Plaintiff and the Class suffered damages and losses as described above as a result of Defendants' deceptive trade practices.

104.    Defendants' deceptive trade practices were performed in bad faith as contemplated by Colo. Rev. Stat. Ann. § 6-1-113(2)(a)(III).

105.    Plaintiff and the Class seek actual damages, treble damages, attorneys' fees, costs, and any other just and proper relief available thereunder.

**COUNT II**
**Breach of Express Warranty Against Defendants on Behalf of the Class**

106.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

- 55 -

107.    Defendants marketed and sold their Contaminated Dog Foods into the stream of commerce with the intent that the Contaminated Dog Foods would be purchased by Plaintiff and the Class.

108.    Defendants expressly warranted, advertised, and represented to Plaintiff and the Class that their Contaminated Dog Foods are:

> (a) natural, fit for human consumption, fit for canine consumption, in compliance with relevant EU regulations and standards and made from "Biologically Appropriate" and "Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish, and vegetables;
>
> (b) contain "only 1 supplement – zinc;"
>
> (c) nutritious, superior quality, pure, natural, healthy and safe for consumption;
>
> (a) "provid[e] a natural source of virtually every nutrient your dog needs to thrive;" and
>
> (b) "guaranteed to keep your dog healthy, happy and strong."

109.    Defendants made these express warranties regarding the Contaminated Dog Foods' quality, ingredients, and fitness for consumption in writing through their website, advertisements, and marketing materials and on the Contaminated Dog Foods' packaging and labels.  These express warranties became part of the basis of the bargain Plaintiff and the Class entered into upon purchasing the Contaminated Dog Foods.

110.    Defendants' advertisements, warranties, and representations were made in connection with the sale of the Contaminated Dog Foods to Plaintiff and the Class.  Plaintiff and the Class relied on Defendants' advertisements, warranties, and representations regarding the Contaminated Dog Foods in decided whether to purchase Defendants' products.

111.    Defendants' Contaminated Dog Foods do not conform to Defendants' advertisements, warranties and representations in that they:

(a) are not natural or suitable for consumption by humans or canines;

(b) contain levels of various heavy metals; and

(c) contain levels of BPA.

112.    Defendants were on notice of this breach as they were aware of the included heavy metals and/or BPA in the Contaminated Dog Foods and based on the public investigation by the Clean Label Product that showed their dog food products as unhealthy.

113.    Privity exists because Defendants expressly warranted to Plaintiff and the Class that the Contaminated Dog Foods were natural, suitable for consumption, and contained only meat, poultry, fish, and/or vegetables, and guaranteed to keep dogs healthy, happy, and strong.

114.    As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Contaminated Dog Food that is worth less than the price they paid and that they would not have purchased at all had they known of the presence of heavy metals, and/or BPA.

115.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' failure to deliver goods conforming to their express warranties and resulting breach.

## COUNT III
### Breach of Implied Warranty of Merchantability Against
### Defendants on Behalf of the Class

116.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

117.    Defendants are merchants engaging in the sale of goods to Plaintiff and the Class.

118.    There was a sale of goods from Defendants to Plaintiff and the members of the Class.

119.    At all times mentioned herein, Defendants manufactured or supplied the Contaminated Dog Foods, and prior to the time the Contaminated Dog Foods were purchased by Plaintiff and the Class, Defendants impliedly warranted to them that the Contaminated Dog Foods were of merchantable quality, fit for their ordinary use (consumption by dogs), and conformed to the promises and affirmations of fact made on the Contaminated Dog Foods' containers and labels, including that the food was:

> (a) natural, fit for human consumption, fit for canine consumption, in compliance with relevant EU regulations and standards and made from "Biologically Appropriate" and "Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish, and vegetables;
>
> (b) contain "only 1 supplement – zinc;"
>
> (c) nutritious, superior quality, pure, natural, healthy and safe for consumption;
>
> (d) "provid[e] a natural source of virtually every nutrient your dog needs to thrive;" and
>
> (e) "guaranteed to keep your dog healthy, happy and strong."

120.    Plaintiff and the Class relied on Defendants' promises and affirmations of fact when they purchased the Contaminated Dog Foods.

121.    The Contaminated Dog Foods were not fit for their ordinary use, consumption by dogs, and did not conform to Defendants' affirmations of fact and promises as they contained heavy metals and/or BPA at material levels to a reasonable consumer.

122.    The Contaminated Dog Foods that Defendants delivered to Plaintiff and the Class also did not conform to affirmations of fact that they were natural because they contained the industrial chemical BPA.

123.    Defendants breached the implied warranties by selling the Contaminated Dog Foods that failed to conform to the promises or affirmations of fact made on the container or label as each product contained heavy metals and/or BPA.

124.    Defendants were on notice of this breach as they were aware of the heavy metals and/or BPA included in the Contaminated Dog Foods, and based on the public investigation by the Clean Label Product that showed their dog food products as unhealthy.

125.    Privity exists because Defendants impliedly warranted to Plaintiff and the Class through the warranting, packaging, advertising, marketing, and labeling that the Contaminated Dog Foods healthy, natural, and suitable for consumption and by failing to make any mention of heavy metals or BPA.

126.    As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Contaminated Dog Food that is worth less than the price they paid and that they would have not have purchased at all had they known of the presence of heavy metals and/or BPA.

127.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' failure to deliver goods conforming to their implied warranties and resulting breach.

## COUNT IV
### Fraudulent Misrepresentation Against Defendants on Behalf of
### the Class

128.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

129.    Defendants falsely represented to Plaintiff and the Class that their Contaminated Dog Foods are:

> (a) natural, fit for human consumption, fit for canine consumption, in compliance with relevant EU regulations and standards and made from "Biologically Appropriate" and "Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish, and vegetables;

> (b) contain "only 1 supplement – zinc;"

> (c) nutritious, superior quality, pure, natural,  healthy and safe for consumption;

> (d) "provid[e] a natural source of virtually every nutrient your dog needs to thrive;" and

> (e) "guaranteed to keep your dog healthy, happy and strong."

130.    Defendants intentionally and knowingly made these misrepresentations to induce Plaintiff and the Class to purchase their Contaminated Dog Foods.

131.    Defendants knew that their representations about the Contaminated Dog Foods were false in that the Contaminated Dog Foods contain levels of heavy metals and/or BPA as well as chemical ingredients.  Defendants allowed their packaging, labels, advertisements, promotional materials, and website to intentionally mislead consumers, such as Plaintiff and the Class.

132.    Plaintiff and the Class did in fact rely on these misrepresentations and purchased the Contaminated Dog Foods to their detriment. Given the deceptive manner in which Defendants advertised, represented and otherwise promoted the Contaminated Dog Foods, Plaintiff and the Class' reliance on Defendants' misrepresentations was justifiable.

133.    As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Contaminated Dog Food that is worth less than the price they paid and that they would not have purchased at all had they known of the presence of heavy metals and/or BPA.

134.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**COUNT V**
**Fraud by Omission Against Defendants on Behalf of the Class**

135.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

136.    Defendants concealed from and failed to disclose to Plaintiff and the Class that their Contaminated Dog Foods contained heavy metals and/or BPA.

137.    Defendants further concealed from and failed to disclose to Plaintiff and the Class that their Contaminated Dog Foods contained chemical ingredients.

138.    Defendants were under a duty to disclose to Plaintiff and members of the Class the true quality, characteristics, ingredients and suitability of the Contaminated Dog Foods because: (1) Defendants were in a superior position to know the true state of facts about their product; (2) Defendants were in a superior position to know the actual ingredients, characteristics, and suitability of the Contaminated Dog Foods; and (3) Defendants knew that Plaintiff and the Class could not reasonably have been expected to learn or discover that the Contaminated Dog Foods were misrepresented in the packaging, labels, advertising, and website prior to purchasing the Contaminated Dog Foods.

139.    The facts concealed or not disclosed by Defendants to Plaintiff and the Class are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the Contaminated Dog Foods.

140.    Plaintiff and the Class justifiably relied on the omissions of Defendants to their detriment.  The detriment is evident from the true quality, characteristics, and ingredients of the Contaminated Dog Foods, which is inferior than advertised and represented by Defendants.

141.    As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Contaminated Dog Food that is worth less than the price they paid and that they would not have purchased at all had they known of the presence of heavy metals and/or BPA.

142.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**COUNT VI**
**Negligent Misrepresentation Against Defendants on Behalf of**
**the Class**

143.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

144.    Defendants had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the formulation, testing, formulation, manufacture, marketing, distribution, and sale of the Contaminated Dog Foods.

145.    Defendants breached their duty to Plaintiff and the Class by formulating, testing, manufacturing, advertising, marketing, distributing, and selling a product to Plaintiff that is does not have the ingredients, qualities, characteristics, and suitability for consumption that Defendants'

advertised and by failing to promptly remove the Contaminated Dog Foods from the marketplace or to take other appropriate remedial action.

146.    Defendants knew or should have known that the ingredients, qualities, and characteristics of the Contaminated Dog Foods were not as advertised or suitable for their intended use, consumption by dogs, and was otherwise not as warranted and represented by Defendants. Specifically, Defendants knew or should have known that: (1) the certain of the Contaminated Dog Foods were not natural because they contained levels of the chemical BPA; (2) the Contaminated Dog Foods were not nutritious, superior quality, pure, natural, healthy and safe for consumption because they contained high levels of heavy metals; and (3) and the Contaminated Dog Foods were otherwise not as warranted and represented by Defendants.

147.    As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Contaminated Dog Food that is worth less than the price they paid and that they would not have purchased at all had they known they contained heavy metals and/or BPA.

148.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

### COUNT VII
### Unjust Enrichment Against Defendants on Behalf of the Class

149.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

150.    Substantial benefits have been conferred on Defendants by Plaintiff and the Class through the purchase of the Contaminated Dog Foods.  Defendants knowingly and willingly accepted and enjoyed these benefits.

151.    Defendants either knew or should have known that the payments rendered by Plaintiff were given and received with the expectation that the Contaminated Dog Foods would have the qualities, characteristics, ingredients, and suitability for consumption represented and warranted by Defendants.  As such, it would be inequitable for Defendants to retain the benefit of the payments under these circumstances.

152.    Defendants' acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendants to retain the benefits without payment of the value to Plaintiff and the Class.

153.    Plaintiff and the Class are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants, plus interest thereon.

154.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against the Defendants as to each and every count, including:

A.    An order declaring this action to be a proper class action, appointing Plaintiff and her counsel to represent the Class, and requiring Defendants to bear the costs of class notice;

B.    An order enjoining Defendants from selling the Contaminated Dog Foods until the levels of heavy metals and/or  BPA are removed or full disclosure of the presence of such appear on all labels, packaging and advertising;

C.    An order enjoining Defendants from selling the Contaminated Dog Foods in any manner suggesting or implying that they are healthy, natural, and safe for consumption;

D.      An order requiring Defendants to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing products;

E.      An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

F.      An order requiring Defendants to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of Colorado law, plus pre- and post-judgment interest thereon;

G.      An order requiring Defendants to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

H.      An order requiring Defendants to pay all actual and statutory damages permitted under the counts alleged herein;

I.      An order requiring Defendants to pay punitive damages on any count so allowable;

J.      An order awarding attorneys' fees and costs, including the costs of pre-suit investigation, to Plaintiff and the Class; and

K.      An order providing for all other such equitable relief as may be just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: October 29, 2018                    LOCKRIDGE GRINDAL NAUEN P.L.L.P.


                                          By:  s/ Rebecca A. Peterson
                                          ROBERT K. SHELQUIST, #21310X (MN)
                                          REBECCA A. PETERSON, #0392663 (MN)
                                          100 Washington Avenue South, Suite 2200
                                          Minneapolis, MN 55401
                                          Telephone: (612) 339-6900
                                          Facsimile: (612) 339-0981
                                          E-mail: rkshelquist@locklaw.com
                                                     rapeterson@locklaw.com

                                          GUSTAFSON GLUEK, PLLC
                                          DANIEL E. GUSTAFSON, #202241
                                          KARLA M. GLUEK, #238399
                                          RAINA C. BORRELLI, #392127
                                          Canadian Pacific Plaza
                                          120 South 6th Street, Suite 2600
                                          Minneapolis, MN 55402
                                          Telephone: (612) 333-8844
                                          Facsimile: (612) 339-6622
                                          E-mail: dgustafson@gustafsongluek.com
                                          kgluek@gustafsongluek.com
                                          rborrelli@gustafsongluek.com


                                          ROBBINS ARROYO LLP
                                          KEVIN A. SEELY (199982)
                                          STEVEN M. MCKANY (271405)
                                          600 B Street, Suite 1900
                                          San Diego, CA 92101
                                          Telephone: (619) 525-3990
                                          Facsimile: (619) 525-3991
                                          E-mail:  kseely@robbinsarroyo.com
                                                     smckany@robbinsarroyo.com

CUNEO GILBERT & LADUCA, LLP
CHARLES LADUCA
KATHERINE VAN DYCK
4725 Wisconsin Ave NW, Suite 200
Washington, DC 20016
Telephone: 202-789-3960
Facsimile: 202-789-1813
E-mail: kvandyck@cuneolaw.com
charles@cuneolaw.com


LITE DEPALMA GREENBERG, LLC
JOSEPH DEPALMA
SUSANA CRUZ HODGE
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone:  (973) 623-3000
E-mail:   jdepalma@litedepalma.com
scruzhodge@litedepalma.com

ANDREWS DEVALERIO LLP
Glen Devalerio
Daryl Andrews
265 Franklin Street, Suite 1702
Boston, MA 02110
Telephone: (617) 936-2796
E-mail: glen@andrewsdevalerio.com
daryl@andrewsdevalerio.com

POMERANTZ LLP
Gustavo F. Bruckner
Samuel J. Adams
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
E-mail:  gfbruckner@pomlaw.com
sjadams@pomlaw.com

**Attorneys for Plaintiffs**